Battle, J.
 

 The right of the slaves Nehemiah, Nelly and Wright to their freedom appears to ¡us te be unquestionable. The two former are -clearly under the express provisions of •the will- ¡of James Davis; -and the latter, -either under the ■proper .construction of the will, ¡or by the express terms of the will of Sophia Davis. The only question in the case, is,'whether the boy Alvis can claim to be emancipated under either will. 'That question is certainly -not without its difficulties, and we have considered--it-under the various aspects presented by the able arguments- *©f the -counsel, and have come to the conclusion, -that Alvis, -upon a just construction, -of the will -of James Davis, -must -follow the condition of bis
 
 *5
 
 parents, aná bas a right to be emancipated with them. The slaves Nehemiah and Nelly were in effect bequeathed by the testator to his widow for life, and then to be free; with a proviso, that if they could not comply with the laws of the State, so as to entitle themselves to 'freedom, they should belong to the testator’s son, Michael Caffey Davis. Had they, at the termination of the life estate-, been unable to comply with the condition, their issue or increase would have gone with them into servitude to the remainder man, whether such issue or increase were mentioned in the will or not: differing in this respect from the fruits or profits of any other species of property arising during the life estate. That is too well -settled to require -the citation of authority for its support. Why then should not the issue go -with them into freedom, upon their performance of -the condition that was to confer it upon them ? Why any more necessity that the testator should mention issue or increase, to give liberty to such increase, than to doom it to slavery ? The answer of the defendants’ counsel, is, that during the life estate, the mother was a slave, and that -t.m issue born during that period, must also be a slave, according to the maxim
 
 partus sequitur
 
 ventrera, and in support of the proposition he has referred to, and relied on a case decided in Kentucky, in 1811, Ned v. Beal, 2 Bibb Rep. 298. The ■question in that case arose upon a bequest by a testator to his wife, of certain slaves “ to serve in the following manner, and to be free at the following periods: Jude to be free in the year 1804, and Dinah to be free in the year 1806, and in the meantime the above-named Jude and Dinah shall be schooled in -such -a manner, as to read a chapter in the Bible.” Jude had a.child, (Ned, the plaintiff in the action,) born after the testator’s death, and before the year 1804, and the Court decided in favor of the defendant, who claimed Ned as a slave, upon the ground, that he must follow the condition of his mother at the time of his birth, by force of
 
 *6
 
 the maxim
 
 partus sequitur ventrem.
 
 Without stopping to enquire, whether the Court did not misapply the maxim to the disappointment of the intention of the testator in that case, we hold it to be at variance with
 
 the principle
 
 established by this Court, in the eases to which our attention has been called by the plaintiff’s counsel. Campbell v. Street, 1 Ired. Rep. 109, was decided in 1840. The plaintiff, Lydia Campbell, claimed her freedom under the will of John Campbell, of Nansemond county, Yirginia, which was as follows:
 

 “
 
 My will and desire is, that my negro woman Pender should have her freedom immediately, and her emancipation recorded. My will and desire is, that all the rest of my black people should serve till my youngest child shall be of the age of twenty-one, and for the use of raising my children and young negroes. After my youngest child be of age, my will is, that all my negroes should have their freedom and liberty.”
 

 The plaintiff was born of one of the testator’s negro women after his death, and before his youngest child came to the age of twenty-one, and the defendant contended that, for that reason, she was a slave. This Court, in the able opinion delivered by Judge GastoN, after an argument to show that it was the intention of the testator to emancipate not only all the negroes which he owned at the time of his death, but also their future increase, and that he had power to emancipate the increase, as well as the original stock, proceeded as follows : “ The law of Yirginia allows emancipation by will, and it is conceded that the emancipation directed in this will, with respect to the original stock, is sanctioned by that law, either as an immediate emancipation, with a condition of a short, temporary service, or as an emancipation, to take effect after that temporary service. If it be the former, the claim of the plaintiff to freedom is necessarily complete; but, if it be the latter, then she claims freedom, not as her birthright, but as a gift from her
 
 *7
 
 ■■owner. She was in law his property, which he held in her mother.” The case of Wooten v. Becton, 8 Ired. Eq. Rep. 66, came before the Court at December Term, 1851. upon a bill filed by the executors, to obtain a construction of the following clause in the will of Susan Jones:
 

 “I am anxious to reward the meritorious services of the following named slaves with the boon of freedom, namely ; Phillis, Esther, Nancy, Patsy Scott, John, Amy, Pleasant, Eortuna, Mary West and Sarah, and all their future increase and issue, &c.”
 

 One of the women named in the will had a child born in •the lifetime of the testatrijc, and several children were born .after her death. Chief Justice RmruiN, delivering the opinion of the Court, said upon this subject, “the children born since the death of the testatrix are within the words -of the will, as expressly as those named. With respect to the one born between the making of the will and the death •of the testatrix, the rule is not so clear. Were it a disposition, by the way of legacy, to some other person, the Court would feel bound, by previous adjudications, to hold that the child did not pass to the donee of the mother. But th e conclusion is to the contrary on the direction to emancipate the issue and increase of a female who is emancipated by .name in the will. Increase is admitted in the cases to be
 
 per se
 
 an equivocal term, and therefore it is allowed that ■other things in the will may be looked to, in order to give it a meaning, effectuating the actual intention. The supposition as almost inconceivable, that one should intend that a child :born at any time after the will, should remain in servitude, when, by the will, not only the mother, but her issue and increase, are to be emancipated: or that the intention should not have been directly the reverse; that such child should follow the m ither, and be free also. The purpose of the testatrix plainly denotes, as it seems to the Court, that
 
 ■6
 
 issue and increase ’ was meant to include all born after
 
 *8
 
 the making of the' will.” The principle deducible from these cases appears-to be, that, upon a direction in a will to-emancipate a female slave, either immediately or at a future time, after a temporary enjoyment by another, the issue of such female slave, as an1 incident to and fruit of the mother, must, when nothing top the contrary appears in the will, follow the condition oi the mother, and be emancipated also. Applying this principle- to the case before us, we must say,, that the supposition is almost inconceivable, that the testator should have intended that his only slaves, Nehemiah and Nelly, who had intermarried and had one child, before his- death, should be emancipated and sent out of the" Sta/te, leaving their children here in servitude. Just the reverse must, we think, be necessarily inferred to have been his intention, not only from this consideration, but from the absurdity which must follow any other construction. It is very clear, that the testator did not intend that any other legatee named in his will, except his son, Michael Caffey Davis, should take Nehemiah and Nelly, in case they could not be set free- after his- wife’s death. Now, if the said slaves should entitle themselves to freedom, by complying with the laws of the State; so that the legatee above named could not take them, we do not see how he could take their issue, which is but an incident to- of a- part of them. If he could not take the principal, it is difficult to- maintain the position that he would take the incident,' when it was not-expressly given- to him. We acknowledge the rule, that the-incident follows the principal, and that the incident may,-in express terms, or by necessary implication, be- separated-from the principal; but we hesitate to recognize a rule by which one can take an incident not expressly given to him, while the principal itself is expressly given away from him. The result of the argument would be, that the issue of Nehemiah and Nelly were undisposed of by this clause of the will, and of course fell into the residue, and were to be
 
 *9
 
 sold and divided among certain legatees therein named, of' whom bis wife was one.- In other words, the wife would take the issue during life, under one clause of' the will, and after her death, take a portion of the proceeds of the sale of such issue, under another clause of' the same will. This construction is, from its absurdity, entirely inadmissible. The only other constructor is the one which we adopt, that it must necessarily be inferred to have been the intention of the testator, that the issue of Nehemiah and Nelly should be emancipated with their parents, at the death of the. widow.
 

 This decision prevents the question of election, raised in the argument upon the will of Sophia Davis, from coming before us, and therefore we abstain from expressing any opinion upon it.
 

 All the slaves were, according to the opinion above expressed, entitled to their freedom at the death of the testator’s widow, Sophia Davis, and we think they ought not to be prejudiced by the delay of the administrator,, with the will annexed, in procuring their emancipation, according to law. The administrator must therefore appropriate such of their hires or profits since the time he has received or might have received them, to the purpose of emancipating, and carrying them out of the State..
 
 We
 
 think he has no right to take any other funds out of the estates either of James or Sophia Davis, for those purposes, because the wills pf both, so far from giving such funds, seem father to imply that the slaves must provide the means of securing their emancipation out of their own resources.
 

 A reference must.be made to the clerk, for taking the necessary accounts, and the cause will, be retained for further directions upon the coming in of the report-